SCHOTT, Judge.
Kathie Breeland Rickert has appealed from a judgment recognizing her mother, Vera Chastant Breeland, as the sole heir of the latter’s husband, Hollis Breeland. The issues are whether an act of renunciation by appellant was valid and if so whether a purported revocation of her renunciation was effective so that appellant is entitled to be placed into possession of a portion of the succession.
Decedent, Hollis Breeland, was married only once and then to Mrs. Vera Chastant Breeland. Of the marriage only two children were born, Kathie Breeland Rickert, appellant herein, and Darlene Breeland. Hollis Breeland died on July 7, 1978, survived by his wife and two children. All of his property belonged to the community existing between himsélf and his surviving spouse, including property in St. Tammany Parish. On October 14, 1978, the two daughters executed an act of renunciation of the succession but on March % 1979, *424 appellant executed an act in which she purported to revoke the renunciation in accordance with LSA C.C. Art. 1031, and to accept the succession of her father.
Therefore, Mrs. Vera Chastant Breeland filed a petition seeking to have herself placed into sole possession of the estate and was met with opposition by appellant. Appellant first attacked the validity of her renunciation itself, claiming that it was induced by fraudulent misrepresentations made by her mother which caused her to be misled as to the principal reason, motive and cause for making the renunciation. The alleged misrepresentations consisted of Mrs. Breeland’s assurance that in exchange for the renunciation by appellant she would convey to appellant title to the St. Tammany Parish property at the cost at which Mr. and Mrs. Breeland had originally purchased the property. Alternatively, appellant contends that she revoked her renunciation before Mrs. Breeland accepted the succession so that her revocation was effective under C.C. Art. 1031.
The trial consisted of the testimony of Mrs. Breeland, her two daughters, appellant’s husband and Mrs. Breeland’s brother. Appellant testified that the only reason she had renounced the succession was because her mother had promised to sell the St. Tammany Parish property to her at cost but in January, 1979, her mother offered to sell the property to her at a price far exceeding the cost. She testified that she would not have executed the renunciation except for these representations by her mother. Her testimony was to some extent corroborated by the testimony of her husband. On the other hand, Mrs. Breeland denied having made such an agreement and testified that the renunciation by appellant and her sister Darlene was made in compliance with an agreement that the children had made with both of their parents that upon the death of the first they would renounce so as to leave full control over everything with the survivor. This testimony was corroborated by Darlene Breeland’s testimony and, to some extent, by Mrs. Breeland’s brother’s. The trial court was apparently convinced by the testimony of Mrs. Breeland and her witnesses, and nothing in the record would support an opposite conclusion on our part. From our own review of the record we have no difficulty reaching the trial judge’s conclusion that the act of renunciation was valid.
C.C. Art. 1031 provides that an heir who has renounced may still accept a succession “if it has not been accepted by other heirs.” The evidence shows that Mrs. Breeland continued to manage the property and affairs of the community after her husband’s death, and her conduct was sufficient to constitute a tacit acceptance of the succession on her part. In determining whether a succession has been tacitly accepted, the intent of the person must be considered along with her actions. Barnsdall Oil Co. v. Applegate, 218 La. 572, 50 So.2d 197 (1950); Bradley v. Union Nat. Life Ins. Co., 359 So.2d 663 (La.App. 1st Cir. 1978). While these .cases stress that it is necessary to distinguish acts of ownership from those of mere administration or preservation in determining whether the acts of the heirs constituted a tacit acceptance, the record shows that Mrs. Breeland’s conduct went beyond mere preservation and administration. She and her daughter, Darlene, both testified that it was the intention of all four parties; that is, Mr. and Mrs. Bree-land and their two daughters, that upon the death of the first parent, the survivor would be left to enjoy what they had worked for without interference from the daughters. Mrs. Breeland accepted rent from appellant and her husband for the St. Tammany Parish property in January and February, 1979, and she also accepted the portion of the profits from a nursery which appellant and her husband were operating on the property just as though Mr. Breeland were still alive and getting the share of the profits for the community. Finally, we find it curious that appellant would now assert that her mother had not accepted the succession when her theory necessarily requires her mother’s acceptance in order for her mother to convey the property to her at the cost figure. If any credibility is attached to *425 appellant’s version of the agreement it necessarily implies acceptance on Mrs. Bree-land’s part in order for the agreement to be carried out by Mrs. Breeland.
Finally, we note that Art. 1031’s provisions clearly apply to Mrs. Breeland since, upon the renunciation of her daughters of the succession, she became the heir under G.C. Art. 916, there being no surviving ascendants. See Paline v. Heroman, 211 La. 64, 29 So.2d 473 (1946). Thus, we conclude that appellant could not revoke her renunciation because her mother, who was the heir next in line, had already accepted the succession before she attempted the revocation.
Accordingly, the judgment appealed from ' is affirmed.
AFFIRMED.